# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY
# CAMDEN VICINAGE

| | |
|---|---|
| INOCENCIA RAMOS, | |
| Plaintiff | Civil No. 15-8771 (RBK) |
| v. | **OPINION** |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | |
| Defendants. | |

**KUGLER**, United States District Judge:

This matter comes before the Court upon the appeal of Inocencia Ramos ("Plaintiff") for review of the final determination of the Commissioner of Social Security ("Commissioner"). The Commissioner denied her application for Supplement Security Income ("SSI") under Title XVI of the Social Security Act and Child's Insurance Benefits ("CIB") under Title II of the Social Security Act. For the reasons set forth below, the decision of the Commissioner is **VACATED** and the Court will remand this matter to the Administrative Law Judge ("ALJ") for further proceedings consistent with this Opinion.

## I.  BACKGROUND

Plaintiff protectively filed a claim for SSI and CIB benefits on December 12, 2011 for the alleged physical and mental ailments detailed below. Record ("Rec.") at 18 (Doc. No. 7-2). Plaintiff's claims were initially denied on July 5, 2012 and denied after reconsideration on December 14, 2012, after which she requested a hearing before an ALJ that was held on

February 4, 2014. *Id.* The ALJ denied Plaintiff's claims on August 29, 2014. *Id.* at 15. The Appeals Council denied Plaintiff's request for review on October 30, 2015, and the ALJ's determination became the final decision of the Commissioner. *Id.* at 1-3. Plaintiff filed the instant Complaint on December 21, 2015. (Doc. No. 1)

### A. Plaintiff's Alleged Impairments

For background purposes, a brief medical history of Plaintiff's ailments follows. Plaintiff initially alleged that she suffered from diabetes, juvenile arthritis, depression, and anxiety. Rec. at 125 (Doc. No. 7-3). She left school in eighth grade, and testified that while there she was in a separate classroom consistent with special education. *Id.* at 45. She has never lived by herself and is cared for by her family. Rec. at 56-57. She has never worked. *Id.* at 78. Plaintiff claims that her anxiety and depression worsened after her mother's death in 2009, which she said in 2012 still felt "like it happened yesterday." *Id.* at 360 (Doc. No. 7-6). She alleges difficulty in following directions, memory, and concentration. *Id.* at 66-67, 358. She claims to hear whispers and see shadows. *Id.* at 71. She has been hospitalized several times for her diabetes, and she has had a spotty history of complying with diabetes treatment. *Id.* at 24. She relies on her family to help her remember to take her insulin. *Id.* at 57. She alleges that she can only stand for thirty minutes at a time before she experiences sharp leg pain. *Id.* at 60-61.

Plaintiff was first admitted to Nueva Vida Behavioral Health Center on February 1, 2010, where she was diagnosed with depressive disorder, diabetes, and "family problems" and assigned a GAF score of 50. *Id.* at 555, 560 (Doc. No. 7-8). Plaintiff visited Nueva Vida for more than seventy treatment sessions between February 2010 and December 2013. *See id.* at 639-41 (Doc. No. 7-9). Notes from these sessions indicate that Plaintiff was consistently anxious and depressed, though not to such a degree as to limit her ability to participate in the treatment

session. *See id.* at 570-637. Nueva Vida also crafted and regularly updated treatment plans for Plaintiff, though these records are largely illegible. *See id.* at 561-69. Though the signature of the therapist who performed these sessions is likewise illegible, Plaintiff's treatment was overseen by Dr. Lyda Monte, who also managed Plaintiff's medications. *See id.* at 426-36 (Doc. No. 7-7). Over the same period from 2010 to 2013, Dr. Monte filled out New Jersey state forms certifying Plaintiff's disability. *See id.* at 642-66. On these forms, Dr. Monte indicated that Plaintiff's primary diagnosis was "depressive disorder NOS," while also noting that she suffered from anxiety, depression, sleep disturbances, socialization problems, a bad temper, and poor concentration and memory. *E.g.*, *id.* at 644-45. Dr. Monte did not mention any of Plaintiff's physical disabilities, nor did she check the box indicating that Plaintiff suffered from a disability attributable to "Mental Retardation-IQ." *E.g.*, *id.* at 644. On May 7, 2014, Dr. Monte filled out the Social Security Administration's Medical Source Statement form on behalf of Plaintiff. *Id.* at 687-89. Dr. Monte indicated that Plaintiff suffered from marked impairments, defined as "a serious limitation" that causes "a substantial loss of the ability to effectively function," in Plaintiff's ability to understand and remember simple instructions, make judgments on simple work-related decisions, carry out complex instructions, respond appropriately to usual work situations and changes in a routine work setting, and interact appropriately with supervisors, coworkers, and the public. *Id.* at 687-88. Dr. Monte also found that Plaintiff was moderately impaired, defined as a "more than slight limitation" that nonetheless allowed satisfactory function, in her ability to carry out simple instructions, and understand and remember complex instructions. *Id.* at 687. To support these judgments, Dr. Monte cited Plaintiff's depressive disorder, anxiety, poor concentration, socialization problems, social phobia, and bad temper. *Id.* at 687-88.

Plaintiff received several consultative examinations during her Social Security proceedings, including one from Dr. Lewis Lazarus on May 25, 2012. *Id.* at 25-26. Dr. Lazarus noted that Plaintiff was well-groomed, cooperative, and alert and oriented in all spheres. *Id.* at 440. However, Plaintiff reported suffering from excessive worry, hopelessness, inability to sleep, and other signs indicative of depression and anxiety. *Id.* at 440. Plaintiff was slouched, restless, and crying, with a depressed affect. *Id.* at 440. Dr. Lazarus noted that Plaintiff did not seem to fully understand the reason for the examination. *Id.* Plaintiff struggled with several different tests of memory and concentration. *Id.* Dr. Lazarus estimated that Plaintiff's intellectual function was in the borderline range. *Id.* Dr. Lazarus diagnosed Plaintiff with learning disorder NOS, recurrent severe major depressive episodes without psychotic features, generalized anxiety disorder, insulin-dependent diabetes, and problems regarding her family, educational, and vocational function. *Id.* at 441. Dr. Lazarus also provided a rule-out diagnosis of borderline intellectual function and estimated Plaintiff GAF at 45. *Id.* Dr. Lazarus indicated that he did not believe Plaintiff was "a viable candidate for a vocational assessment and rehabilitation at this time due to her profound mood disorder and generally unstable emotional status." *Id.*

**B. The ALJ's Decision**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ used the established five-step evaluation process to determine if Plaintiff was disabled. *See* 20 C.F.R. § 404.1520. For the first four steps of the evaluation process, the claimant has the burden of establishing her disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611-12 (3d Cir. 2014). First, the claimant must

show that she was not engaged in "substantial gainful activity" for the relevant time period. *See* 20 C.F.R. § 404.1572 (defining "substantial gainful activity"). Second, the claimant must demonstrate that she has a "severe medically determinable physical or mental impairment" that lasted for a continuous period of at least 12 months. *See* 20 C.F.R. § 404.1520(a)(4)(ii) (explaining second step); 20 C.F.R. § 404.1509 (setting forth the duration requirement). Third, either the claimant shows that her condition was one of the Commissioner's listed impairments, and therefore she is disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1520(a)(4)(iii) (explaining the third step); *see also* 20 C.F.R. pt. 404, subpt. P., app. 1. Fourth, if the condition is not equivalent to a listed impairment, the claimant must show that she cannot perform her past work, and the ALJ must assess the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv) (explaining the fourth step); 20 C.F.R. § 404. 1520(e) (same). If the claimant meets her burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant is capable of performing based on her RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520 (a)(4)(v) (explaining the fifth step). If the claimant can make "an adjustment to other work," she is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity after December 2, 2009. Rec. at 20. At step two, the ALJ found that Plaintiff had the severe impairments of type I diabetes mellitus; major depressive disorder; anxiety disorder; bipolar disorder; and learning disorder, not otherwise specified. *Id.* The ALJ also considered Plaintiff's allegations of diabetic neuropathy and rheumatoid arthritis, but found that these conditions were not supported by the medical evidence and determined them to be nonsevere. *Id.*

at 21. At step three, the ALJ noted that Plaintiff did not suffer from one of the listed impairments that would render her automatically disabled. *Id.* at 21. At step four, the ALJ found that Plaintiff's impairments were not equivalent to any listed impairment, and that while she had no past relevant work, she had the RFC to perform sedentary work with some limitations.[1] *Id.* at 21-22, 27. At step five, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff was qualified to perform based on her RFC, age, education, and work experience. *Id.* at 27. Accordingly, the ALJ concluded that Plaintiff was not disabled during the relevant time period. *Id.* at 28.

## II. STANDARD OF REVIEW

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). The often-used quotation for the standard is that substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *See, e.g., Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if this court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

---

1. The ALJ found that Plaintiff had the RFC to
    perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except she would be limited to performing simple tasks. The claimant would be limited to low stress work, defined as work that is routine and would not involve strict production quotas. She is able to understand, remember, and carry out simple instructions. The claimant could have no more than occasional interaction with the public. She would be off-task 5% of the workday in addition to normal breaks.
   Rec. at 22.

6

When reviewing a matter of this type, this Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). This Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See Schonewolf v. Callahan*, 927 F. Supp. 277, 284-85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

## III. DISCUSSION

The ALJ determined that Plaintiff was not disabled within the meaning of sections 223(d) and 1614(a)(3)(A) of the Social Security Act. Plaintiff presents four arguments on appeal of the Commissioner's final decision: first, that the ALJ should have obtained formal intelligence and achievement testing for Plaintiff; second, that the ALJ should have included borderline intellectual functioning among Plaintiff's impairments; third, that the ALJ improperly assigned little weight to agency examiner Dr. Lazarus's opinion on Plaintiff's ability to participate in vocational rehabilitation; and fourth, that the ALJ improperly assigned little weight to treating physician Dr. Monte's opinion regarding Plaintiff's mental limitations. The Court addresses each argument in turn.

**A. Formal Intelligence and Achievement Testing**

Plaintiff argues that the ALJ erred by not ordering formal intelligence testing after Dr. Lazarus's rule-out diagnosis of borderline intellectual functioning. Pl.'s Br. at 6-7 (Doc. No. 12). Generally, a claimant has the burden to allege and prove the existence of a claimed impairment. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1512(a), 416.912(a). Because of the non-adversarial nature of Social Security disability proceedings, the ALJ also has a responsibility to develop the record fully. *See Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995). An ALJ must consider all impairments which a claimant alleges or for which the ALJ receives evidence. 20 C.F.R. § 404.1512(a). However, the ALJ has discretion over whether to order additional tests or examinations, and need only do so when the existing medical evidence is insufficient to make a determination of disability. *See* 20 C.F.R. § 404.1519a(b); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205 (3d Cir. 2008). "[T]he ALJ's duty to develop the record does not require a consultative examination unless the claimant establishes that such an examination is necessary to enable the ALJ to make the disability decision." *Thompson v. Halter*, 45 F. App'x 146 (3d Cir. 2002) (citing 20 C.F.R. §§ 404.1517, 416.917; *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)). While an ALJ may not reject probative evidence without explanation, the ALJ need not cite specific reasons for implicitly rejecting evidence which is irrelevant or discounted by other evidence in the record. *See Johnson*, 529 F.3d at 204-05.

Plaintiff does not allege that she suffers from borderline intellectual function.[2] At her hearing, she testified regarding her special education program, difficulties in reading and math, and trouble following instructions. *See* Rec. at 45, 51-53, 67. However, these impairments are

---

2. Plaintiff's counsel argues that a person with borderline intellectual function is neither capable of nor responsible for knowing that she suffers from borderline intellectual function. Pl.'s Reply Br. at 4. This does not alleviate Plaintiff's legal burden, assisted by competent counsel, of proving the existence and extent of her impairments.

8

consistent with the learning disorder NOS and other mental impairments the ALJ found and are not, by themselves, specific evidence of borderline intellectual functioning.

Furthermore, Dr. Lazarus's rule-out diagnosis of borderline intellectual functioning did not obligate the ALJ to order intelligence testing for Plaintiff. The ALJ possessed and considered ample evidence regarding Plaintiff's mental impairments and capabilities, including several consultative examinations. *See id.* at 23-27. Dr. Lazarus's diagnosis itself was of a provisional character.[3] *See id.* at 440-41. Further, the ALJ had sufficient evidence to conclude that his diagnosis is not supported by Plaintiff's extensive records from Nueva Vida and the opinion of her treating physician, Dr. Monte, none of which indicate that Plaintiff's intellectual function was in the borderline range.[4] *See id.* at 555-666, 687-89. Given the tenuousness of Dr. Lazarus's diagnosis and its lack of support elsewhere in the record, the ALJ's discretionary decision not to order intelligence testing was supported by substantial evidence.

Plaintiff also argues that the ALJ should have ordered achievement testing to precisely determine Plaintiff's ability to read and write. Pl.'s Br. at 8. Plaintiff does not cite any authority requiring the ALJ to augment the evidence in the record with such testing. The ALJ relied on evidence in the record of Plaintiff's difficulties in school and during consultative examinations to determine that Plaintiff suffered from a severe learning disorder. *See* Rec. at 20-21, 23, 25-26.

---

3. A "rule-out" diagnosis indicates that "there is reason to suspect" that the patient has the condition but that "the doctor would not be comfortable giving such a diagnosis at that time" without additional evidence. *United States v. Grape*, 549 F.3d 591, 593 n.2 (3d Cir. 2008).
4. Plaintiff's therapist at Nueva Vida wrote "deferred" in the Axis II diagnosis category where Dr. Lazarus reported Plaintiff's rule-out borderline intellectual function. *See* Rec. at 428, 561-69. Plaintiff correctly points out that Dr. Monte was not treating her for borderline intellectual function, which is an inherent and untreatable cognitive deficiency. Pl.'s Reply Br. at 4 (Doc. No. 15). However, when Dr. Monte was asked to estimate Plaintiff's overall mental capabilities, she made no mention of borderline function or a similar intellectual disability. *See* Rec. at 687-88. On New Jersey state disability forms with a checkbox for "Mental Retardation-IQ", Dr. Monte consistently left this box blank. *See, e.g.*, *id.* at 642, 651, 657.

This evidence was sufficient for the ALJ to make her determination, and there is no conflicting evidence which an additional consultative examination might help resolve. Therefore, the ALJ's decision not to order achievement testing for Plaintiff was supported by substantial evidence and must be affirmed.

Even if the ALJ erred in failing to order additional testing, Plaintiff has not shown how her failure to do so was harmful. Plaintiff, as the party seeking to overturn an administrative decision, bears the burden of demonstrating harm from an alleged error. *Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)); *see also Rutherford*, 399 F.3d at 553 (requiring a claimant to specify how an ALJ's alleged failure to consider an additional impairment would have affected the ALJ's analysis or final determination). Plaintiff argues that, because the ALJ failed to order intelligence testing, she did not consider Plaintiff's borderline intellectual functioning in combination with her other impairments as required by 20 C.F.R. § 404.1523. Pl.'s Br. at 8. This is essentially a restatement of the alleged error, not an explanation of the harm. Plaintiff similarly fails to adequately allege harm arising from the ALJ's decision not to order achievement testing, stating only that the testing would have "delineate[d] with precision Ms. Ramos's actual ability to read and write." *Id.* at 9. Even accepting her arguments that the ALJ should have ordered more testing, Plaintiff has failed to articulate how the ALJ's decision might have been altered had she done so. Therefore, Plaintiff has not shown sufficient grounds for remand on that basis. *See Holloman*, 639 F. App'x at 814 ("[Plaintiff's] assertion entirely sidesteps the question, which is *how* [Plaintiff] might have prevailed . . . if the ALJ's analysis had been more thorough. [Plaintiff] offers no answer to that question and therefore no basis for us to remand the case to the ALJ.") (emphasis in original) (citing *Rutherford*, 399 F.3d at 553).

### B. Consideration of Borderline Intellectual Functioning

Plaintiff also argues that the ALJ erred by not specifically evaluating Dr. Lazarus's rule-out diagnosis of borderline intellectual functioning in her decision. This claim is similar to her claim that Dr. Lazarus's diagnosis obligated the ALJ to order additional intelligence testing, and fails for the same reasons. Generally, an ALJ "must consider all the evidence in the record and give some reason for discounting the evidence she rejects." *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). When crafting the RFC, the ALJ must ensure that it reflects the totality of a claimant's credibly established limitations, whether severe or non-severe. *See* 20 C.F.R. 404.1523(c); *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000)) (noting that "the ALJ need only include in the RFC those limitations he finds to be credible."). However, an ALJ need not cite every piece of evidence a claimant presents, and is entitled to implicitly reject evidence which is irrelevant to her decision or overwhelmingly contradicted by other evidence in the record, so long as her decision is still supported by substantial evidence. *See Johnson*, 529 F.3d at 204. Plaintiff bears the burden of demonstrating how the ALJ's consideration of an additional condition would have altered the ALJ's analysis or determination.[5] *See Rutherford*, 399 F.3d at 553.

The facts of *Rutherford* are particularly instructive for Plaintiff's case. In *Rutherford*, the plaintiff argued that the ALJ had failed to consider her obesity in combination with her other impairments. *Id.* at 552. The claimant had not listed obesity as one of her impairments during her disability proceedings, though her weight as recorded in her medical records could be fairly

---

5. When an ALJ finds that a claimant suffers from severe impairments and allows her analysis to proceed past Step Two, failure to consider some other alleged impairment *at Step Two* is harmless and cannot itself be a basis for remand. *Salles*, 229 F. App'x at 145 n.2.

11

construed to put the ALJ on notice that she was overweight. *Id.* at 553. The claimant did not allege that her obesity caused any freestanding limitations, but rather asserted that it made the effects of her other impairments more severe. *Id.* Applicable regulations required the ALJ to include consideration of a claimant's obesity at various points throughout the process, and the ALJ had failed to explicitly do so. *Id.* at 552. Nevertheless, the Third Circuit affirmed the ALJ's omission, noting that the plaintiff had failed to articulate how the ALJ's decision regarding her other impairments might have been different had the ALJ considered her obesity. *Id.* at 553. Importantly, the Third Circuit also found that, because the plaintiff's obesity was obvious to her medical providers and served mainly to aggravate her other impairments, its effects on the plaintiff's capabilities were already incorporated in their records. *Id.* The ALJ had relied on these records when considering the plaintiff's case and determining the RFC, and the Third Circuit found that this was "a satisfactory if indirect consideration of that condition." *Id.*

Here, Plaintiff does not allege that she suffers from borderline intellectual functioning. Despite hundreds of pages of records from examining and treating physicians, this diagnosis is expressed only tentatively in Dr. Lazarus's report. *Id.* at 441. The ALJ's determination included extensive discussion of the evidence from Plaintiff's physicians, including Dr. Lazarus. *Id.* at 25-27. As with the claimant's obesity in *Rutherford*, every one of the numerous physicians who evaluated Plaintiff's mental impairments necessarily considered her cognitive capabilities; only Dr. Lazarus attached the label of borderline intellectual function. Furthermore, Plaintiff has made no showing of harm from the ALJ's omission, nor has she explained how the ALJ's determination might have been different had the ALJ considered Plaintiff's borderline intellectual function. Instead, Plaintiff asserts the legal conclusion that the ALJ failed to consider all of Plaintiff's ailments in combination as evidence of harm. *See* Pl.'s Br. at 10-11; Pl.'s Reply

Br. at 9. In a case concerned almost entirely with Plaintiff's mental impairments, Plaintiff's failure to suggest what additional limitations her alleged borderline intellectual function might impose speaks volumes. Plaintiff is correct that borderline intellectual function is a medically determinable impairment. Pl.'s Br. at 7. However, as with the claimant's obesity in *Rutherford*, the limitations that might be imposed by Plaintiff's purported cognitive deficit are included in Plaintiff's other impairments which form the basis for the ALJ's determination. In Plaintiff's RFC, the ALJ limited Plaintiff to simple, routine, low-stress tasks and carrying out simple instructions with only occasional interaction with the public. Rec. at 22. Given the absence of supporting evidence and without a more specific showing of harm from Plaintiff, this Court cannot find that the ALJ's failure to discuss Dr. Lazarus's diagnosis is remandable error.

### C. Consideration of Dr. Lazarus's Vocational Rehabilitation Opinion

Third, Plaintiff claims that the ALJ failed to appropriately evaluate Dr. Lazarus's opinion that Plaintiff "[did] not appear to be a viable candidate for a vocational assessment and rehabilitation at this time due to her profound mood disorder and generally unstable emotional status." *Id.* at 441. Plaintiff argues that a person who cannot even participate in a vocational assessment and rehabilitation program cannot plausibly perform sustained work. Pl.'s Br. at 12. A claimant's final disability determination is an administrative finding, not a medical one. The opinions of even treating physicians on a claimant's ability to work are not binding on the ALJ. 20 C.F.R. § 404.1527(d)(1). However, even though a physician's opinion on a claimant's ability to work does not bind the ALJ, it still "must never be ignored." SSR 96-5p, 1996 WL 374183 at *3 (July 2, 1996).

Here, though the ALJ failed to evaluate Dr. Lazarus's opinion, Plaintiff has not shown how the error was harmful. The only harm Plaintiff articulates—that the ALJ should have found

13

Plaintiff disabled as a result of Dr. Lazarus's opinion—is explicitly precluded by 20 C.F.R. section 404.1527(d)(1). As a result, this Court cannot remand on this basis. However, because this case will be remanded for reasons explained below, the ALJ should explain her evaluation of Dr. Lazarus's opinion more thoroughly.

### D. Dr. Monte's Opinion

Finally, Plaintiff claims that the ALJ improperly rejected the opinion of her treating physician, Dr. Monte. The Court agrees. The ALJ is responsible for assigning weight to the medical opinions of record. *See* 20 C.F.R. § 404.1527. The ALJ must, however, "explain the basis for his or her conclusions." *Fargnoli*, 247 F.3d at 42. If evidence is rejected, "an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 711 (3d Cir. 1981). The explanation need not be comprehensive; "in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981).

In general, opinions from treating sources receive more weight because they are most likely to be able to provide a "detailed, longitudinal picture of [a claimant's] medical impairment(s)" and "unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2). If an opinion from a treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record, the opinion is accorded controlling weight. *Id.* If not, the ALJ determines how much weight to assign the opinion based on the length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, level of evidentiary support, consistency with the record, specialization of the physician, and other factors. *See* 20 C.F.R.

14

§ 404.1527(c). The ALJ may assign more or less weight to a treating physician's opinion "depending upon the extent to which supporting explanations are provided." *Plummer*, 186 F.3d at 429 (citations omitted). However, an ALJ "cannot reject evidence for no reason or the wrong reason." *Id.* (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Furthermore, an ALJ may only reject a treating physician's assessment outright in the face of contradictory medical evidence, and may not do so based on "speculative inferences from medical reports" or "credibility judgments, speculation, or lay opinion." *Morales*, 225 F.3d at 317 (citations omitted).

The ALJ in this case mentions several pieces of evidence from Nueva Vida and Plaintiff's treating physician Dr. Monte, assigning each little or no weight. Rec. at 26-27. These include the New Jersey state disability forms (assigned no weight because they were unsupported by narrative descriptions and included no limitations), Dr. Monte's May 2014 Medical Source Statement (given little weight because it purportedly conflicted with the Nueva Vida treatment notes, and with Plaintiff's activities of daily living), and the treatment notes themselves (given little weight because they purportedly lacked objective clinical findings and remained stable with little variation over four years). *Id.*

Given the heightened weight generally afforded to the opinions of treating physicians, this Court cannot find that the ALJ's stated reasons for discounting Dr. Monte's opinions and notes are supported by substantial evidence. First, the ALJ mischaracterizes the level of descriptiveness on the New Jersey forms, which include diagnoses of "depressive disorder NOS" and mention, to take one example, that Plaintiff has "socialization problems," a "bad temper," displays "aggressive behavior," and "reports feeling depressed, normal anxiety levels, sleep disturbances [sic]." *Id.* at 642-43. Furthermore, the forms are an assessment from a treating

15

physician which cannot be rejected without contradictory medical evidence, which the ALJ does not cite. More concerning is the ALJ's stated rationale for discounting the Nueva Vida treatment notes and Dr. Monte's Medical Source Statement. The ALJ does not explain why the treatment notes' stability over time makes them less trustworthy. The Court presumes that this line of thought infers that the observations contained within the treatment notes, including diagnoses, assessments, and GAF scores, were mere boilerplate language and not genuine clinical findings. This is precisely the kind of "speculative inference from medical reports" the Third Circuit prohibits an ALJ from using to impeach a treating physician's opinion. *Morales*, 225 F.3d at 317. It is also unclear to this Court how Plaintiff's ability to drive or get along with her family negate Dr. Monte's opinion that a person with "socialization problems, social phobia, bad temper [sic]" suffers from marked impairments in her ability to get along with others in a competitive work setting, even a low-stress one. Rec. at 688. Accordingly, this Court finds that the ALJ did not give appropriate consideration to Dr. Monte's opinion as a treating physician.[6]

Plaintiff has also adequately shown harm from the ALJ's treatment of Dr. Monte's opinion. Plaintiff cites SSR 85-15, which indicates that a "substantial loss of ability" to "understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting . . . would justify a finding of disability." Pl.'s Br. at 16 (citing SSR 85-15, 1985 WL 56857 (Jan. 1, 1985)). Dr. Monte found that Plaintiff suffered marked impairments, defined as "a substantial loss in the ability to effectively function," in her ability to understand and remember simple instructions; to interact appropriately with the public, supervisors, and coworkers; and to

---

6. The Court agrees, however, with the ALJ's determination that Plaintiff's complaints suggestive of an additional psychotic disorder are not supported by medical evidence in the record. Rec. at 27.

respond appropriately to changes in a routine work setting. Rec. at 688. Unlike Dr. Lazarus's conclusion that Plaintiff was ineligible for vocational rehabilitation, Dr. Monte's finding of marked impairments is a medical opinion, not an opinion on Plaintiff's disability per se. Nonetheless, each of these findings would, if credited, have justified a finding of disability by the ALJ under SSR 85-15. Accordingly, the ALJ's improper discounting of this opinion was harmful and justifies remand to the ALJ for further consideration.

## IV. CONCLUSION

For the reasons discussed above, the decision of the Commissioner is **VACATED** and the Court will remand this matter to the ALJ for further proceedings consistent with this Opinion.


Dated: _08/07/2017__                              s/ Robert B. Kugler
                                                                                         ROBERT B. KUGLER
                                                                                         United States District Judge